## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Sedrick Mitchell,

                          Petitioner,          Case No. 15-cv-10764

v.                                             Judith E. Levy
                                               United States District Judge
Jeffrey Woods,
                                               Mag. Judge Anthony P. Patti
                          Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. After a jury trial in Wayne County Circuit Court, Petitioner Sedrick Mitchell was convicted of one count of forced labor involving criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f), two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(b), one count of pandering, MICH. COMP. LAWS § 750.455, two counts of accepting earnings from a prostitute, MICH. COMP. LAWS § 750.457, and one count of conducting a criminal enterprise. MICH.

COMP. LAWS § 750.159i(1).  Petitioner was sentenced as a third-time habitual felony offender to a series of concurrent terms, with the longest being terms of thirty-five to sixty years for the criminal sexual conduct offenses.

Read in the light most favorable to Petitioner, the *pro se* petition appears to raise nine claims:  (1) Petitioner was denied the effective assistance of counsel at trial (Dkt. 1 at 4); (2) Petitioner's sentence constitutes cruel and unusual punishment (*id*. at 14); (3) the prosecutor violated Petitioner's due process rights by amending the criminal information (*id*. at 15); (4) the trial court erroneously instructed the jury (*id*. at 21); (5) the prosecutor committed misconduct (*id*. at 25); (6) the victims are not entitled to restitution (*id*. at 28); (7) Petitioner's right to be free from double jeopardy was violated by multiple convictions resulting from a single sexual penetration (*id*. at 30); (8) there was insufficient evidence presented at trial to sustain the criminal sexual conduct convictions (*id*. at 10-13); and (9) the trial court incorrectly scored the sentencing guidelines.  (*Id*. at 16-17.)

2

For the reasons set forth below, Petitioner's claims are denied because they are without merit. Petitioner is also denied a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## I.   Background

This Court recites verbatim the relevant facts relied on by the Michigan Court of Appeals, which this Court must presume are correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> In July 2010, C. M. left the home of her grandmother because she was over protective. C. M. learned of defendant through a friend and contacted him. He took her to a home near Eastland Mall and engaged in sex with her. Initially, he sent her to live in a drug house with a 19-year old male. Then, he began to establish prostitution customers for C. M. and another girl named "Rosie" that occurred in homes. However, in early August 2010, Rosie left defendant. Defendant explained that he wanted C. M. to make more money in light of Rosie's departure, and he took C. M. to work on the streets at the corner of Livernois and Fenkell in the city of Detroit. Defendant established the prices that C. M. would charge for her services and followed her while she worked the streets. She turned over any money she earned to him. If C. M. complained about having to work or said "something smart" to defendant, he would strike her. C. M. was forced to work every day from 8:00 p.m. until 6:00 a.m., except Sundays. On Sunday, defendant gave her

3

money to go shopping. While she worked, defendant gave her $10 for food.

Before meeting defendant, C. M. did not engage in prostitution. Defendant maintained control over C. M. by threatening to kill her or her grandmother if C. M. tried to leave him. Defendant always had a gun with him. C. M. observed defendant strike other people, including Rosie. On one occasion, defendant forced C. M. to perform a sexual act upon defendant in front of his friends by holding a gun to her head. Ultimately, C. M. left defendant on August 25, 2010, after the two argued over C. M.'s refusal to go to work. He threatened her with a gun, but when he turned, she struck him with a bottle and ran. C. M. called the police from a gas station, hid from view as the police drove her by defendant's home, and identified defendant. However, defendant was not apprehended at that time.

Although D. J. did not work for defendant at the same time as C. M., her testimony was remarkably similar. Specifically, in early November, 2010, D. J. ran away from home after being sexually abused by a family member. D. J. agreed to go to a party at a home near Eastland Mall where she encountered defendant. Defendant asked D. J. how old she was, and she said, "15." Defendant responded, "Now, you're 19." He engaged in sexual intercourse with D. J., and the next day, sent her out to work on the streets as a prostitute with another woman named "LaTonya." When advised by LaTonya that they had not earned enough money for defendant, D. J. left defendant's residence and stayed away for several weeks.

On December 25, 2010, D. J. returned to defendant's home after contracting a sexually transmitted disease.  D. J. needed to have a prescription filled and knew that defendant would help her obtain the prescription.  She promised defendant that she would not leave him again, and he got the pills that she needed.  The next evening, defendant picked up D. J. and two other girls and took them to the area of Fenkell and Livernois to work the streets.  D. J. continued to work for defendant until she was picked up by the police and returned to her family home.  After a family dispute, she was placed in a mental hospital for five days, but upon her release, D. J. contacted defendant.  Defendant picked her up, she changed her clothes, and he drove her to Fenkell and Livernois to work as a prostitute.

D. J. worked every day for defendant, starting between 7:00 and 9:00 p.m., and returning between 8:00 and 10:00 a.m. One night, D. J. only earned $40.  Defendant slapped her across the face and told her that would not happen again. D. J. observed defendant strike other girls, and he told the girls that if they left, defendant would find them and kill them.  D. J. admitted that she engaged in sexual intercourse with defendant voluntarily and even initiated sex with him. However, one sexual assault provided the motivation for D. J. to leave defendant permanently.  Defendant attempted to anally penetrate D. J. while he choked her, and when she resisted, he forced vaginal penetration as he continued to choke her.  Shortly after this assault, D. J. made arrangements to have a friend pick her up when defendant was not home.

C. M. and D. J. came to the attention of a task force investigating child exploitation.  The authorities learned of

5

C. M. when reviewing the August 25, 2010 police report. A relative of D. J.'s called the authorities to report her as missing. The information provided by these girls led to an investigation of defendant, and the discovery that he was identified on a social networking website as "Pimping Rock."

Defendant's theory of the case was that once the minors came into contact with the police, they falsely accused defendant to deflect from their own misconduct. On cross examination, C. M. admitted that she had posted information on the Internet that was incorrect, and D. J. admitted that she had stolen items from her family and a threat against a family member caused her to be sent to a mental hospital. Although C. M. accused defendant of assault and contacted the police, defendant was not arrested at that time, but C. M. was detained for a matter unrelated to defendant. Despite the attack on the credibility of the witnesses, defendant was convicted for his role in exploiting the teenage runaways, sexually assaulting them, forcing them to engage in prostitution, and taking their earnings.

*People v. Mitchell*, No. 311605, 2014 Mich. App. LEXIS 235, at *2-7 (Mich. Ct. App. Feb. 6, 2014); (*see* Dkt. 11-19 at 1-3).

Following Petitioner's conviction, he filed an appeal of right. His appellate counsel filed a brief raising two claims: (1) defendant was denied the effective assistance of counsel at trial; and (2) the sentences imposed violated defendant's right to be free from cruel and unusual punishments. *Mitchell*, 2014 Mich. App. LEXIS 235, at *7-17.

6

Petitioner also filed a *pro se* supplemental brief that raised what now form his third through ninth habeas claims. *Id.* at *17-36. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Id.* at *36.

Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court, raising most of the claims he raised before the Michigan Court of Appeals, omitting only his claims that the restitution order was invalid, that his right to be free from double jeopardy was violated, and that the sentencing guidelines were scored incorrectly. (*See* Dkt 11-20.) His *pro se* application also added two additional allegations of ineffective assistance of counsel.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Mitchell*, 497 Mich. 902 (2014). Thus, the Michigan Court of Appeals was the last state court to adjudicate Petitioner's claims.

## II.   Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a federal court can

7

order habeas relief only if the state's adjudication of a claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). When applying these standards, this Court is to examine the holdings of the Supreme Court as they existed at "the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Court can, however, look to decisions of other courts to determine whether a legal principle has been clearly established by the Supreme Court.  *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009); *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not

8

a substitute for ordinary error correction through appeal." *Id.* at 103 (internal quotation omitted).

## III.   Analysis

### a. Ineffective assistance of counsel claim

Petitioner claims that he was denied his Sixth Amendment right to effective assistance of his trial counsel.   Petitioner argues that trial counsel was constitutionally deficient because he stipulated to the admission of a police report that contained inculpatory information, conceded that Petitioner was guilty of firearm and sexual conduct charges, failed to move to adjourn the case to locate the author of the police report, and failed to remove a biased juror.   (Dkt. 1 at 4-8.)

To establish a claim of ineffective assistance of counsel, Petitioner must show that (a) "counsel's performance was deficient," and (b) the "deficient performance prejudiced the defense."   *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To satisfy the performance element, a defendant must point to some action "outside the wide range of professionally competent assistance." *Id*. at 690. To satisfy the prejudice element, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

On federal habeas review of a state court decision on the merits, a court must apply a "doubly" deferential standard of review under AEDPA. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Regarding Petitioner's first argument—that trial counsel was ineffective because he stipulated to the admission of a police report that was authored by an officer who was unavailable to testify at trial—the Michigan Court of Appeals rejected the claim on the merits:

> The defense theory of the case was that the testimony of the victims was not credible. To support the challenge to the credibility of C. M., defense counsel sought to call the officer who prepared the August 25, 2010 police report in response to C. M.'s emergency call. However, the officer did not appear at trial. In order to allow the trial to continue, the prosecution and the defense stipulated to admit the police report at trial.
>
> Generally, police reports are inadmissible hearsay. MRE 801(c); *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011). The stipulation to

10

admit the police report is not a mistake apparent on the record, and this Court cannot examine the admission of the report with the benefit of hindsight. [*People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013)]; [*People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009)]. Although appellate counsel correctly notes that the police report contained information that corroborated the testimony by the victims, the report contained information critical to the defense. The corroborating information in the report was that C. M. identified defendant as a man who held her captive and forced her to engage in sex. However, C. M. also testified that defendant held a gun to her, and she was forced to strike him with a bottle to leave the house. Despite this testimony, the police report did not contain C. M.'s account of a gun or an injury to defendant from a bottle to allow her escape. Additionally, notwithstanding C. M.'s statements and identification, defendant was not apprehended by the police and charged with any crimes at that time. On the contrary, as a result of her emergency call, C. M. was detained for a matter unrelated to defendant's activities. Consequently, the stipulated admission of the police report disclosed contradictions by C. M. to the jury.

More importantly, the admission of the police report proved beneficial to the defense because the jury acquitted defendant of the charges related to C. M.'s departure from defendant's home. Specifically, C. M. testified that she argued with defendant about having to work. To obtain C. M.'s cooperation, defendant allegedly took C. M.'s clothes and threatened her with a gun. Defendant was charged with three crimes arising from this argument, felonious assault, felony-firearm, and felon in possession, but was acquitted of

11

all three of these offenses. The jury also acquitted defendant of the first-degree CSC charge wherein C. M. testified that she was forced to engage in a sexual act with defendant in front of others at gunpoint. "A jury has the right to disregard all or part of the testimony of a witness." *People v Goodchild*, 68 Mich App 226, 235; 242 NW2d 465 (1976). In light of the admission of the police report which did not contain any reference to a gun and the acquittal of the gun offenses, the factual predicate for a claim of ineffective assistance of counsel was not established. [*People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999)].

Despite the acquittal of four offenses related to C. M.'s testimony and the content of the police report, defendant alleges that the admission of details in the police report that corroborated the testimony by the victims caused him to be convicted of eight offenses. However, the factual predicate to support that allegation is not apparent on the record and constitutes mere speculation. *Id.* After the parties stipulated to the admission of the police report, the trial court noted its policy that the exhibit would be available to the jury, but not submitted to them unless requested. A request by the jury to examine the exhibits is not contained in the lower court record. Furthermore, there was ample corroborating evidence to support defendant's convictions irrespective of the content of the police report.

*Mitchell*, 2014 Mich. App. LEXIS 235, at *7-14; (*see* Dkt. 11-19 at 4-5).

The Michigan Court of Appeals opinion on the merits is a "reasonable argument that counsel satisfied *Strickland*'s deferential

12

standard," so habeas relief cannot be granted with respect to this argument. *See Richter*, 562 U.S. at 105.

Although Petitioner provides reasons to undercut his trial counsel's decision to stipulate to admission of the police report, counsel's strategy "need not be particularly intelligent or even one most lawyers would adopt." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001), *rev'd on other grounds*, 535 U.S. 685 (2002). "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

Here, trial counsel's decision to use the police report to attack C. M.'s credibility seems to have been a professionally competent tactical decision based on counsel's calculation that on balance the report was more helpful than harmful, given that the jury acquitted Petitioner on the charges directly evidenced by C. M.'s statements contained in the report. Accordingly, Petitioner has failed to demonstrate entitlement to relief with respect to his first allegation of ineffective assistance of counsel.

13

The Michigan Court of Appeals also rejected Petitioner's second allegation—that trial counsel was constitutionally deficient because he conceded that Petitioner was guilty of firearm and sexual conduct charges—on the merits:

> Although not raised in the statement of the questions presented, defendant further asserts that trial counsel was ineffective during closing arguments . . . by conceding that defendant may be guilty of the three firearm related charges and a CSC offense. . . . [C]ounsel did not concede that defendant was guilty of four offenses; the context of the entire closing argument reveals that he argued that reasonable doubt existed with regard to all of the charged offenses. In fact, the jury acquitted defendant of the four offenses appellate counsel contends were conceded. Defendant failed to meet this burden with regard to this claim of error.

*Mitchell*, 2014 Mich. App. LEXIS 235, at *14-15; (Dkt. 11-19 at 5-6).

For the same reasons as those set forth above, the Michigan Court of Appeal's decision was not unreasonable. Petitioner was acquitted of the firearm offenses and related sexual conduct charge (*i.e.*, forcing C. M. to perform oral sex at gunpoint), the offenses that Petitioner claims trial counsel conceded during closing argument. And as noted by the state court, there is nothing on the record to support Petitioner's allegation that trial counsel conceded these offenses as a factual matter.

14

Thus, the state court factual finding was not unreasonable.  There is no basis on which to conclude that trial counsel was ineffective for making any such concession.

Petitioner's third and fourth allegations of ineffective assistance of counsel were not presented to the Michigan Court of Appeals in either appellate counsel's brief or in Petitioner's supplemental *pro se* brief. (*See* Dkt. 11-19 at 58-66, 117-151.)  Rather, they were first presented to the state courts in Petitioner's application for leave to appeal, filed in the Michigan Supreme Court, as New Issues I and II.  (*See* Dkt. 11-20 at 10-11.)  Because these arguments were not presented to the state courts and are thus unexhausted, habeas relief cannot be granted on these grounds.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The Court may nevertheless deny relief with respect to unexhausted claims if it can determine that they lack merit.  28 U.S.C. § 2254(b)(2).

In his first new claim, Petitioner argues that his trial counsel was ineffective for failing to seek an adjournment so that the officer who authored the police report noted above could provide testimony. Petitioner makes the conclusory statement that the officer "would have provided the jury with reasonable doubt to convict" based on "the[]

15

testimony." (Dkt. 11-20 at 10.)  Petitioner proffers no evidence that the officer would have testified favorably.  Nor does he present any evidence that his trial counsel failed to consider moving for an adjournment.

Absent any affidavit or other evidence establishing what a potential witness would specifically say that would be exculpatory, Petitioner cannot establish ineffective assistance of counsel on this ground.  *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits or any other evidence establishing what [potential witnesses] would have said. . . .  In the absence of any evidence showing that they would have offered specific favorable testimony, [Petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence.").  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689).  Thus, Petitioner cannot be granted habeas relief based on this allegation.

Finally, Petitioner asserts that his counsel was ineffective for failing to strike a juror on the grounds that she was biased.

16

(Dkt. 11-20 at 11.)   The record shows that during jury selection, one juror initially indicated that she might not be able to be fair.   But after further discussion with counsel and the trial court, the juror indicated that she could be fair.   (Dkt. 11-12 at 118-20.)   The juror also indicated during questioning that her brother had been falsely accused of a crime. (*Id.* at 119.)

It was not constitutionally deficient to decline to challenge this juror.   Rather, the Court can see why trial counsel would not.   The juror's indication that a relative had been falsely accused of a crime suggests that trial counsel made a reasonable tactical decision of the kind insulated from review under *Strickland*.   Moreover, there is no evidence that the juror in question was actually biased against Petitioner, preventing him from showing that he was prejudiced by his counsel's decision not to move to strike the juror.   When a petitioner claims ineffective assistance of counsel for failing to strike a biased juror, the petitioner must show that the juror was actually biased against him.   *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). Accordingly, none of Petitioner's arguments establish ineffective assistance of counsel, and the claim is denied.

17

### b. Cruel and unusual punishment claim

Petitioner argues that his Eighth Amendment right to be free from cruel and unusual punishments is violated by the length of his sentence. (Dkt. 1 at 14-17.) The Michigan Court of Appeals rejected Petitioner's claim on the merits, finding that his sentence was not disproportionate to the seriousness of his offense and taking into account his age and criminal history. *Mitchell*, 2014 Mich. App. LEXIS 235, at *15-17; (*see* Dkt. 11-19 at 6).

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). Only an extreme disparity between crime and sentence violates the Eighth Amendment. *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).

18

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). And "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner minimizes the harmfulness of his actions, implying that his young victims were somehow partially responsible for his crimes. But the record supports the Michigan Court of Appeals' conclusion that Petitioner "engaged in violent conduct to ensure that his victims would comply with his demands." *Mitchell*, 2014 Mich. App. LEXIS 235, at *17. Petitioner's thirty-five- to sixty-year sentence for his crimes does not rise to the level of a cruel and unusual punishment. *See, e.g.*, *Andrade*, 538 U.S. at 77 (not unreasonable under AEDPA for state court to find that two consecutive twenty-five years sentences, totaling fifty years, based on stealing $200 of videotapes constitutional); *Smith v. Howerton*, 509 F. App'x 476, 484 (6th Cir. 2012) (state court upholding sixty years based on possession of small amount of drugs not

"unreasonable" under AEDPA, in part because of "vagueness of the gross-disproportionality principle").

The Michigan Court of Appeals did not unreasonably apply the law when it found that Petitioner's sentence does not run afoul of the Eighth Amendment. Accordingly, Petitioner's Eighth Amendment claim is denied.

### c. Due process claim

Petitioner argues that his due process right to fair notice was violated when, on the first day of trial, the prosecutor successfully moved to amend a heading in the criminal information to eliminate the term kidnapping from the human trafficking charge. (Dkt. 1 at 18-20.)

The Michigan Court of Appeals rejected this claim on the merits:

On the first day of trial, the prosecutor noted that although the information entitled offenses as human trafficking, the actual statutory and jury instruction reference was to forced labor involving CSC. Defense counsel did not object to the change to the title of the offense, but noted that he was prepared to defend against the CSC charge to the extent it involved kidnapping, and did not want the reference to kidnapping removed. The prosecutor noted that the charging language at bind over contained no reference to kidnapping. The trial court granted the motion to amend.

20

> In light of the record, defendant waived appellate review of
> this claim of error. [*People v Vaughn*, 491 Mich 642, 663;
> 821 NW2d 288 (2012)]. Nonetheless, the trial court did not
> abuse its discretion by allowing the amendment of the
> information. [*People v Unger*, 278 Mich App 210, 221; 749
> NW2d 272 (2008)]. Defendant was charged in the
> information with violating MCL 750.462i. The information
> entitled the crime "human trafficking." The prosecutor
> merely amended the information to change the title of the
> crime to forced labor involving CSC, the underlying
> statutory charge continued to be MCL 750.462i. The
> amendment did not prejudice the defense because it did not
> charge a new crime. [*People v Siterlet*, 299 Mich App 180,
> 186; 829 NW2d 285 (2012)]. This claim of error is without
> merit.

*Mitchell*, 2014 Mich. App. LEXIS 235, at *22-23; (*see* Dkt. 11-19 at 8-9).

Setting aside the state court's conclusion that the claim was

waived, the amendment to the information nevertheless does not

present a basis for granting habeas relief. Under the Sixth

Amendment, a criminal defendant has the right to be informed of the

nature of the accusations against him. *Cole v. Arkansas*, 333 U.S. 196,

201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948); *Lucas v. O'Dea*, 179

F.3d 412, 417 (6th Cir. 1999). As applied to the states under the "due

process clause of the Fourteenth Amendment[,] . . . whatever charging

method the state employs must give the criminal defendant fair notice

21

of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988).

An indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). To show that the alleged defect in the information requires habeas relief, Petitioner must establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

Here, Counts I and II of the information were labeled "Human Trafficking." (Dkt. 11-12 at 6-7.) The language of the charge itself, however, did not contain any mention of kidnapping or human trafficking. (*Id.* at 7.)

The victims' testimony at the preliminary hearing before the criminal information was filed gave Petitioner a detailed account of the allegations made against him, including the allegation that he committed acts of forced labor involving sexual conduct. (*See, e.g.*, Dkt. 11-3 at 33-36.) And the late amendment merely deleted language

22

appearing in the titles of the first two counts. The substance of the criminal information did not change.

The Michigan Court of Appeals was not unreasonable in finding that the amendment of the criminal information did not deny Petitioner his right to fair notice of the charges against him. Thus, Petitioner was not deprived of an opportunity to defend himself at trial. Accordingly, Petitioner's Eighth Amendment claim is denied.

### d. Jury instruction claim

Petitioner argues that the trial court instructed the jury on the wrong version of first-degree criminal sexual conduct by failing to instruct the jury on the requirement that the victim be between thirteen and sixteen years of age and that the victim suffered personal injury. (Dkt. 1 at 21-24.)

After finding that Petitioner waived any error at trial by agreeing to the jury instructions, the Michigan Court of Appeals nevertheless found the claim to be without merit:

> Although he claims he could only be convicted of third-degree CSC because of the age of the victims and that he was entitled to instructions regarding consent and physical injury, that is not the case. As previously noted, MCL 750.520b(1)(b)(*iii*) provides that a person is guilty of first-

23

degree CSC when the victim is between 13 and 16 years of age and the actor is in a position of authority over the victim and uses that authority to coerce the victim to submit. An underage victim is incapable of consenting, irrespective of the testimony from the victims, *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005), and a victim need not resist when a defendant is charged under MCL 750.520b, see MCL 750.520i. Defendant failed to demonstrate entitlement to appellate relief. MCL 768.29.

*Mitchell*, 2014 Mich. App. LEXIS 235, at *32; (*see* Dkt. 11-19 at 12).

To demonstrate entitlement to relief on a claim that a trial court gave an improper jury instruction, a habeas petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Here, the Michigan Court of Appeals did just that—it found that the trial court properly instructed the jury on the elements of the charged offenses. This Court cannot second-guess the state court's determination of state law, and thus Petitioner cannot demonstrate

24

entitlement to relief based on this claim.  Accordingly, Petitioner's claim for relief based on improper jury instructions is denied.

### e. Prosecutorial misconduct claim

Petitioner argues that the prosecutor improperly denigrated Petitioner's character, vouched for the credibility of its witnesses, and improperly used evidence of prior bad acts.  (Dkt. 1 at 25-28.)

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly* and *Darden* are the proper standard).

After finding that Petitioner's allegations were not preserved by a contemporaneous objection, the Michigan Court of Appeals rejected Petitioner's prosecutorial misconduct claim on the merits:

25

Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *Id*. at 448-449. Where a curative instruction would have alleviated the prejudicial effect of any prosecutorial questioning or comment, error requiring reversal has not occurred. *Id*. at 449. When determining whether prosecutorial misconduct deprived a defendant of a fair and impartial trial, the defendant bears the burden of demonstrating that the conduct resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "A prosecutor may fairly respond to an issue raised by the defendant." *Id*. at 135. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Despite this discretion, it is nonetheless improper for the prosecutor to appeal to the jury to sympathize with the victim. *Id*.

Although defendant raised general claims of prosecutorial misconduct, he failed to cite to the lower court record and address whether the claims were preserved for appellate review. Following a review of the record, we conclude that defendant failed to demonstrate plain error affecting substantial rights. *Ackerman*, 257 Mich App at 448. The record does not support the contention that the prosecutor improperly referenced defendant in derogatory terms or

26

improperly vouched for the credibility of her witnesses. Rather, the prosecutor argued that the nature of the charges and the corroboration in the testimony by the victims, despite being employed by defendant at different times, demonstrated that their testimony was credible. Similarly, there is no indication in the record that the prosecutor attempted to convict defendant based on character evidence.

Defendant's contention that the prosecutor improperly admitted evidence of other bad acts offered by the victims is also without merit. The jury is entitled to hear the "complete story" surrounding the matter in issue. *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996). Evidence of other criminal events may be admissible when so blended or connected to the other crime that proof of one explains the circumstances of the other. *Id.* The more jurors know about the full transaction, the better equipped at performing their sworn duty. *Id.* The testimony regarding defendant's assaults on others was not improper MRE 404(b) evidence, but explained how defendant obtained compliance from his victims and his management of his victims. *Sholl*, 453 Mich at 742. The prosecutor did not improperly admit defendant's prior convictions before the jury. Rather, to avoid an inquiry into defendant's criminal history, the parties stipulated that defendant was not eligible to carry a firearm. A party cannot agree to specific action in the trial court and submit, on appeal, that the action was erroneous. *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995). Finally, there is no requirement that the testimony of a criminal sexual conduct victim be corroborated for purposes of MCL 750.520b. MCL 750.520h. This claim of error does not entitle defendant to appellate relief.

*Mitchell*, 2014 Mich. App. LEXIS 235, at *18-21; (*see* Dkt. 11-19 at 7-8).

Here, Petitioner does no more than disagree with the state court's conclusions.  "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted).  Because "the *Darden* standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155 (internal quotation marks omitted).

Petitioner does not point to any part of the record refuting the state court's characterization of what occurred at trial.  Considering the state court analysis of Petitioner's prosecutorial misconduct claims, Petitioner fails to establish that the state court determination rejecting his prosecutorial misconduct claims was contrary to, or an unreasonable application of, clearly established law as set forth by the Supreme Court.  Accordingly, Petitioner is not entitled to habeas relief based on his prosecutorial misconduct claims.

28

### f. *Restitution claim*

Petitioner argues that he was improperly ordered to pay restitution, because the jury acquitted him of the charges of forced labor involving criminal sexual conduct and pandering with respect to complainant D. J. (Dkt. 1 at 28-29.)

Federal habeas relief cannot be granted on this ground. A federal court may entertain a habeas application from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because an order of restitution has no bearing on the validity or duration of a petitioner's custody, a challenge to an order of restitution is not cognizable under § 2254. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995); *see also United States v. Mays,* 67 F. App'x 868, 869 (6th Cir. 2003) (district court lacked subject matter jurisdiction over defendant's § 2255 post-judgment motion to reduce or rescind fine levied in criminal judgment; defendant was not in custody, as required in a motion to vacate sentence or a petition for a writ of habeas corpus). Accordingly, Petitioner's claim for habeas relief based on the order of restitution is denied.

29

### g. Double jeopardy claim

Petitioner argues that his rights under the Double Jeopardy Clause were violated when he was convicted of multiple criminal sexual conduct offenses arising out of a single act. Specifically, Petitioner asserts that for a single sexual penetration he was convicted of two versions of first-degree criminal sexual conduct, one requiring personal injury and the other requiring that he was in a position of authority over the victim. (Dkt. 1 at 30-31.)

The Michigan Court of Appeals found that Petitioner abandoned the claim during his direct appeal because his *pro se* supplemental brief gave only cursory treatment to the issue. *Mitchell*, 2014 Mich. App. LEXIS 235, at *29-30. The state court also found that the claim ignored the fact that the victims testified to multiple acts of penetration, contrary to Petitioner's allegations. *Id.*; (*see* Dkt. 11-19 at 11).

Petitioner was convicted of two counts of first-degree criminal sexual conduct with respect to victim D. J. One conviction (Count 3) was under MICH. COMP. LAWS § 750.520b(1)(f) (force or coercion used to accomplish sexual penetration causing personal injury), and the other (Count 5) was under § 750.520(1)(b) (victim between thirteen and

30

sixteen years of age and actor is in position of authority over victim).
Count 3 related to an incident in which D. J. testified that Petitioner
choked her during a forcible sexual penetration. (*See* Dkt. 11-15 at 67.)
Count 5 related to other incidents in which D. J., who was between
thirteen and sixteen years of age, testified that she had sexual
intercourse with Petitioner while she worked for him as a prostitute.
(*See id.* at 73-74.)   Petitioner's claim is thus based on an incorrect
reading of the record.

Petitioner was not convicted of two counts of first-degree criminal
sexual conduct for a single act.  Accordingly, the claim for habeas relief
based on double jeopardy is denied.

### h. Sufficiency of the evidence claim

Petitioner argues that insufficient evidence was presented by the
prosecution to sustain his criminal sexual conduct convictions.  (Dkt. 1
at 10-13.)   He asserts that his first-degree criminal sexual conduct
convictions were not supported by sufficient evidence because the
prosecutor did not prove that Petitioner was in a position of authority
over the victims or that he caused them personal injury.  (*Id.* at 10-12.)

He also argues that the only evidence offered in support of the charges was the testimony of "admitted prostitutes." (*Id.* at 12-13.)

As with the other claims raised in Petitioner's *pro se* supplemental brief, the Michigan Court of Appeals found that Petitioner abandoned the claim by failing to adequately brief it. *Mitchell*, 2014 Mich. App. LEXIS 235, at *26. The state court also found that Petitioner's convictions were nevertheless "premised on the jury's evaluation of the credibility of the witnesses." *Id.*; (*see* Dkt. 11-19 at 10).

A "daunting, doubly deferential standard of review" applies to a sufficiency-of-the-evidence claim under AEDPA. *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015). First, a reviewing court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, even if the reviewing court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

32

Here, Petitioner's argument amounts to an attack on the credibility of the witnesses, who Petitioner claims were motivated to falsely accuse him of the charged crimes. Such claims must fail on federal habeas review. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132 (2010) (quoting *Jackson*, 443 U.S. at 326).

The witnesses who testified against Petitioner at trial provided sufficient evidence to convict Petitioner, if their testimony is taken as true. On habeas review, that is what this Court must do. And under the even higher burden of AEDPA, which governs this Court's review, the Michigan Court of Appeals was not unreasonable for so finding.

Accordingly, Petitioner is not entitled to habeas relief with respect to this claim and the claim is denied.

### i. State sentencing guidelines claim

Petitioner argues that the trial court incorrectly scored the sentencing guideline's offense variables. (Dkts. 1 at 15-17, 1-2 at 4.)

State courts are the final arbiters of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner must show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law in order to succeed on such a claim. *See Vliet v. Renico*, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). A sentence imposed within the statutory limits is generally not subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner fails to show how his offense level was improperly scored. Rather, as found by the Michigan Court of Appeals, "there is no indication that a change in the scoring would alter the guidelines range." *Mitchell*, 2014 Mich. App. LEXIS 235, at *36. Moreover, Petitioner does not establish that the Michigan Court of Appeals

34

decision was unreasonable.  Accordingly, Petitioner's claim for habeas relief based on incorrect sentencing guidelines scoring is denied.

## IV.   Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus (Dkt. 1) is DENIED WITH PREJUDICE.

The Court also denies a certificate of appealability.  In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).   Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel,* 529 U.S. 473, 483 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). This determination "requires an overview of the claims in the habeas petition and a general assessment of their merit," but "does not require a showing that the appeal will succeed."  *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003).  Petitioner fails to make a substantial showing of the denial of a federal constitutional right.  Reasonable jurists would not

35

find the Court's assessment of Petitioner's constitutional claims debatable or wrong.

Finally, the Court denies leave to proceed *in forma pauperis* on appeal. A court may grant *in forma pauperis* status if the court finds that an appeal would be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) ("The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which requires showing that the appeal is not frivolous.") (citing *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir. 1997)). Because an appeal could not be taken in good faith here, Petitioner may not proceed *in forma pauperis* if he wishes to appeal this decision. *Id.*

IT IS SO ORDERED.

Dated: December 20, 2016        s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                United States District Judge

36

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 20, 2016.

<u>s/Felicia M. Moses</u>
FELICIA M. MOSES
Case Manager
